CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 AUG -4  PM 2: 27

DEPUTY CLERK_____

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RODNEY MORRIS KLAUS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 4:15-CV-0593-Y-BL** |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U. S. C. § 405 (g), Plaintiff seeks judicial review of a decision of the Commissioner for Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* Compl. (doc. 1). The Commissioner has filed an answer, *see* Def.'s Answer (doc. 13), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "Tr."] (docs. 14-15), including the hearing before the Administrative Law Judge ("ALJ"). The parties have briefed the issues. *See* Pl.'s Mem. (doc. 17); Def.'s Resp. Br. (doc. 18). The United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636 and the parties have not consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, the undersigned recommends that the decision of the Commissioner be affirmed.

## I. BACKGROUND

Plaintiff claims that he is disabled due to heart disease, diabetes, hypertension, sleep apnea, and overactive thyroid. Tr. 48, 56, 139-40. He filed an application for DIB on May 7, 2013, alleging

disability beginning October 5, 2011.[1] Tr. 124. His date of last insured is December 31, 2016. Tr. 135. Therefore, the relevant time period for this application and the Court's review commenced October 5, 2011, and has not yet expired. *See* Tr. 28. The Commissioner denied the application initially on July 1, 2013, Tr. 48-55, and on reconsideration on March 11, 2014, Tr. 56-67. Before denying the application on reconsideration, the Commissioner received additional evidence and considered two new conditions that Plaintiff claimed affected his ability to work (major depression disorder beginning April 28, 2013, and coronary artery disease). Tr. 56-66. At Plaintiff's request, *see* Tr. 79, he received a hearing before Administrative Law Judge ("ALJ") William Helsper on January 5, 2015, *see* Tr. 33-47. On March 24, 2015, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled and was capable of performing his past relevant work. Tr. 27-28.

Applying the sequential, five-step analysis set out in 20 C.F.R. § 404.1520(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 21. Next, the ALJ determined that Plaintiff suffered from the following severe impairments: diabetes mellitus, obesity, coronary artery disease ("CAD"), and hypertension. *Id.* Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the listings.[2] Tr. 23. The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform the full range of sedentary

---

[1]The Administrative Law Judge states that Plaintiff filed his application on May 6, 2013. *See* Tr. 19, 28. This date is also noted when the Commissioner denied the application initially and on reconsideration. Tr. 55-56. The minor discrepancy from the date of the actual application makes no difference to this case.

[2]The relevant regulations explain the purpose and use of the listings of impairments. *See* 20 C.F.R. § 404.1525.

[3]A claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. *Id.* § 404.1546(c). But that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* § 404.1545(a)(3).

work as defined in 20 C.F.R. § 404.1567(a).[4]  Tr. 24-27.  And based upon the RFC determination and testimony from a vocational expert ("VE") about the exertional demands and skill requirements of Plaintiff's prior jobs, the ALJ concluded that Plaintiff could return to his past relevant work as a customer service representative (Dictionary of Occupational Titles ("DOT") # 239.362-014) and call center manager (DOT # 168.167-058). Tr. 27-28.  At Step 4 of the evaluative sequence, the ALJ thus found that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Tr. 28.

The Appeals Council received and considered additional evidence – a two-page brief – when it denied review on June 11, 2015. Tr. 1-6.  The ALJ's decision is the Commissioner's final decision and is properly before the Court for review.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Plaintiff commenced this social security appeal on August 6, 2015.  *See* Compl.  He presents three issues for review: (1) whether the ALJ erred in finding his mental impairments non-severe and relatedly whether the ALJ's RFC findings reflected all practical implications of his documented impairments and limitations; (2) whether the ALJ properly weighed the medical evidence and failed

---

[4]The regulation addresses physical exertion requirements and explains: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). To determine whether an individual has the ability to perform the full range of sedentary work from an exertional standpoint, Program Policy Statement (PPS) 101 elaborates:

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.

Titles II and XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2, SSR 83–10 (PPS–101), 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

to include in the RFC finding all nonexertional limitations supported by the medical evidence; and (3) whether the ALJ properly evaluated his credibility. *See* Pl.'s Mem. at 12.

## II. MEDICAL RECORD

A summary of the relevant medical record may be helpful before setting out the legal standards and analyzing the asserted issues. Plaintiff contends that the ALJ erred in finding his mental impairments non-severe and failing to properly weigh and consider opinions of Nafees Saifee, M.D. *See* Pl.'s Mem. at 12-18.

Plaintiff has a documented history of coronary artery disease beginning in 1991. Tr. 458. After spitting up blood three times on April 28, 2013, he went to the emergency room at John Peter Smith ("JPS") Hospital. Tr. 213. He reported that he had experienced shortness of breath while pulling weeds the day before, stated that rest relieves the symptoms while activity aggravates them, and described the problem as mild and a rare occurrence. *Id.* At that time, Plaintiff was taking only home medications (garlic, cinnamon, and Afrin) and had no prescription medication for eighteen months. Tr. 214. The attending physician noted Plaintiff's obesity; found no confusion or agitation; and described Plaintiff's mood, affect, behavior, judgment, and thought content as normal. *Id.* at 214-15. Plaintiff was discharged with a final impression/diagnosis of (1) spitting blood (hemoptysis), (2) esophagitis, and (3) benign hypertension. Tr. 217.

On July 1, 2013, Frederick Cremona, M.D., a consultative examiner for the Social Security Administration ("SSA") found a severe medically determinable impairment – diabetes mellitus. Tr. 50. He opined that Plaintiff could occasionally lift/carry twenty pounds, ten pounds frequently; stand/walk for six hours in an eight-hour workday; and sit for that same time period. Tr. 51. The doctor found no postural, manipulative, visual, communicative, or environmental limitations. Tr.

52. He concluded that Plaintiff had the RFC to perform his past relevant work and consequently found Plaintiff not disabled. Tr. 52-53.

On July 16, 2013, Plaintiff presented several complaints to Dr. Saifee, including hypertension and major depression. Tr. 467. Dr. Saifee assessed a guarded prognosis; opined that Plaintiff was "disabled," and diagnosed CAD, major depression, hypothyroid, hyperlipidemia, diabetes, and arthritis. *Id.*

Two weeks later, Plaintiff arrived at JPS by ambulance with complaints of chest pain radiating into his left arm and shortness of breath and. Tr. 316, 321. He had not been taking all of his "prescribed medications because [he] lost his job 1.5 years ago." Tr. 321. His mood, affect, judgment, behavior, and thought content were all normal. Tr. 323.

On August 8, 2013, Dr. Saifee noted "multiple problems" with "pain in hands" and CAD. Tr. 627. He diagnosed diabetes, CAD, hypothyroid, and obesity; noted major depression; and stated that Plaintiff was "unable to work" and had "financial problems." *Id.*

Plaintiff returned to JPS on November 20, 2013, with complaints of daily anginal pain "for the last several weeks." Tr. 486. Robert Capper, M.D., of JPS noted that Plaintiff was diabetic and morbidly obese. *Id.* An electrocardiogram suggested "an incomplete left bundle branch block" and Dr. Capper urged Plaintiff to take nitroglycerin, which Plaintiff had, "but did not use . . . because he states it is 'not severe enough.'" *Id.*

On January 9, 2014, G.A. Jason Simpson, Psy.D., conducted a psychological consultative examination of Plaintiff for alleged depression. Tr. 452–56. With respect to Plaintiff's activities of daily living, Dr. Simpson found that Plaintiff was fully able to take care of himself. Tr. 452. In the realm of social functioning, Dr. Simpson found that Plaintiff gets along well with others but has

no structured social activities. Tr. 452-53. Plaintiff reported that he is generally able to follow instructions and complete important tasks when scheduled. Tr. 453. Dr. Simpson noted that there had been no episodes of decompensation or their resulting effects. *Id.* The doctor's mental status examination revealed mild depression with congruent mood, unremarkable motor, and clear speech. *Id.* Plaintiff was alert; able to respond to prompts as given; and oriented to self, place, and time. *Id.* Dr. Simpson found no problem with Plaintiff's thought process, thinking, consideration of similarities and differences, and basic math. Tr. 454. Plaintiff had average abstract reasoning, good concrete abilities and judgment, unimpaired contact with reality, and intact memory. *Id.* Dr. Simpson diagnosed an adjustment disorder with depressed mood and characterized his prognosis as good with individual psychotherapy. Tr. 455.

On February 25, 2014, William Bosworth, M.D., conducted a consultative medical examination of Plaintiff. Tr. 458-61. Plaintiff's chief complaints were heart disease, shortness of breath, and fatigue. Tr. 458. Dr. Bosworth noted the July 2013 cardiac event following Plaintiff being off medication for "about 2 years," but further noted that Plaintiff "is now back on medication evidently most of it." *Id.* Plaintiff reportedly resolved the shortness of breath by walking more slowly. *Id.* With respect to the fatigue, Plaintiff described becoming easily stressed and his legs would ache from time to time. *Id.* Dr. Bosworth recorded that Plaintiff could walk a block, stand for thirty minutes, and did not require a cane, crutch, or other walking assistance. Tr. 459. The doctor further recorded that Plaintiff had been depressed and had described considerable stress caused by not working. *Id.* Dr. Bosworth formed the following impressions: (1) coronary artery disease, (2) shortness of breath likely related to that disease and obesity, (3) fatigue related to those things and/or depression, and (4) morbid obesity. Tr. 460.

Medical consultant, Randal Reid, M.D., completed a Physical Residual Functional Capacity Assessment on March 10, 2014. Tr. 62-64. Dr. Reid noted that Plaintiff could occasionally lift/carry twenty pounds, ten pounds frequently; stand/walk for two hours; and sit for six hours in an eight-hour workday. Tr. 63. He also found that Plaintiff could frequently stoop but could only occasionally climb ramps/stairs, balance, kneel, crouch, and crawl. Tr. 63-64. The doctor found no manipulative, visual, communicative, or environmental limitations. Tr. 64.

The next day, another medical consultant, James B. Murphy, Ph.D., completed a Psychiatric Review Technique ("PRT"), in which he found a medically determinable personality disorder that did not precisely satisfy the diagnostic criteria of Listing 12.08. Tr. 61-62. Dr. Murphy noted mild restriction of ADLs; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace ("CPP"). Tr. 61. The doctor found no episodes of decompensation. *Id.*

The Commissioner provided a Disability Determination Explanation when she denied Plaintiff's claim at the reconsideration level on March 11, 2014. Tr. 56-66. Within that explanation, the Commissioner recognized that a consultative examination was necessary because the record was "not sufficient to support a decision on the claim." Tr. 60. After summarizing Dr. Simpson's findings and other medical records, the Commissioner listed two medically determinable, severe impairments: (1) diabetes mellitus and (2) an unspecified personality disorder. Tr. 60-61.

Plaintiff continued to report fairly frequent anginal pain when he returned to JPS for follow-up in April 2014. Tr. 492-93. Michael S. Vaughan, M.D., of JPS directed that he use "nitroglycerin for those predictable effort angina." Tr. 494. The next month, Plaintiff reported using two to three nitroglycerin tablets per day. Tr. 500. Dr. Vaughan prescribed Ranexa. Tr. 502.

By letter dated May 14, 2014, Justina Amalu, PMHNP-BC of MHMR Tarrant stated that Plaintiff was then receiving mental health services and had been receiving treatment since August 2013. Tr. 470. She identified two current diagnoses: (1) a recurrent, severe major depressive disorder (296.33) and (2) an anxiety disorder (300.00). *Id.*

Plaintiff reported decreased angina attacks with the Ranexa in June 2014, but he also had "some pain in the right calf" when walking. Tr. 510. He continued to report the pain and decreased angina attacks in July 2014. Tr. 522. Katherine Kane, M.D., of JPS recommended further imaging of the lower extremities and a vascular surgical consult. Tr. 525. As of July 2014, Plaintiff was seeing "MHMR for depression" and was taking medication "for mood from MHMR." Tr. 544. At that time, Plaintiff was "[n]egative for dysphoric mood and decreased concentration." *Id.* Examination showed that he had normal mood, affect, and behavior. Tr. 545.

On August 11, 2014, Dr. Saifee noted that Plaintiff was "totally disabled" due to "multiple health related problems." Tr. 472. He noted CAD was the primary disabling diagnosis with diabetes a secondary disabling diagnosis. *Id.* A separate medical record of the same date likewise notes that Plaintiff was "completely disabled" due to "severe [illegible], major depression, obesity, [and] C.A.D." Tr. 476. Plaintiff had decreased pulses in his extremities. *Id.*

On August 20, 2014, Brittany Tabler, M.D., of JPS examined Plaintiff secondary to intermittent leg pain. Tr. 709. At that time, Plaintiff presented a two-month history of leg pain with ambulation – he could walk forty to fifty feet before cramping in his calf would force him to sit and rest. *Id.* Physical examination revealed leg swelling (edema) and an absence of dorsalis pedis ("DP") pulses on right foot and posterior tibial ("PT") pulses on either foot. Tr. 712. Dr. Tabler noted "severe claudication symptoms and significant occlusion on doppler" and directed Plaintiff to return

8

for follow-up "to plan likely surgery." Tr. 713.

Plaintiff returned to JPS for follow-up regarding "elevated blood pressure" on August 26, 2014. Tr. 727. At that time, he reported that his blood pressure was "well controlled at home" but he has chest pain that requires him to take nitroglycerin once per day despite taking Ranexa. *Id.* Anjali Kumar, D.O., noted that Plaintiff had applied for disability and was seeing "MHMR for depression and anxiety disorder." Tr. 728. Physical examination revealed normal mood, affect, and behavior. *Id.* Two days later, Plaintiff visited JPS for follow-up as directed by Dr. Tabler. Tr. 737. She reviewed an August 21, 2014 CTA and concluded that Plaintiff "will need bypass on the right; has aneurysm on left and will need intervention –> will order vein mapping and ask his cardiologist to clear him for the [operation]." *Id.*

In September 2014, Dr. Vaughan again noted decreased chest pain on Ranexa resulting in less use of nitroglycerin. Tr. 666. He also noted that Plaintiff would need a revascularization of his right lower extremity. *Id.* When Plaintiff visited JPS on October 2, 2014, to review his vein mapping study, he reported pain and numbness that had become increasingly worse over the prior two months. Tr. 764. Plaintiff underwent a cardiac catheterization on October 6, 2014. Tr. 787. Three days later, he visited JPS reporting leg "pain at rest, worse with walking." Tr. 773. He had to stop walking after about twenty feet. *Id.* Because he could not walk more than ten fee without severe pain in his lower extremities, he returned to JPS the next month to schedule a procedure for his peripheral vascular disease ("PVD"). Tr. 807. With approval from Dr. Vaughan, Plaintiff was scheduled for surgery for January 2015. Tr. 807-08, 818.

In December 2014, Plaintiff reported that his pain caused him to neglect his diet. Tr. 820. The pain also caused sleeping difficulties. *Id.*

### III. LEGAL STANDARD

In general,[5] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently work-
> ing; (2) the claimant has a severe impairment; (3) the impairment meets or equals an
> impairment listed in appendix 1 of the social security regulations; (4) the impairment
> prevents the claimant from doing past relevant work; and (5) the impairment prevents
> the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448. The Commissioner must assess the claimant's RFC before proceeding to Steps 4 and 5. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). For Steps 1 through 4, the claimant has to burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. If the Commissioner carries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy. *Newton v. Apfel*, 209 F.3d

---

[5]The Act provides an alternate definition of disability for blind individuals who are fifty-five years of age or older. *See* 42 U.S.C. § 423(d)(1)(B). This provision is inapplicable on the current facts.

448, 453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, No. 15-30449, 2016 WL 1551685, at *3 (5th Cir. Apr. 11, 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner and not the court resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

## IV. ANALYSIS

Plaintiff raises three broad issues on appeal: (1) whether the ALJ erred in finding his mental impairments non-severe and relatedly whether the ALJ's RFC findings reflected all practical implications of his documented impairments and limitations; (2) whether the ALJ properly weighed the medical evidence and failed to include in the RFC finding all nonexertional limitations supported by the evidence; and (3) whether the ALJ properly evaluated his credibility. *See* Pl.'s Mem. at 12.

### A. Severity of Mental Impairments and Related Issues

The Commissioner evaluates the severity of mental impairments for adults under a special technique that helps to (1) identify whether additional evidence is needed to determine impairment

11

severity, (2) consider and evaluate the mental impairment's functional consequences on the ability

of a claimant to work, and (3) concisely and consistently organize and present severity findings. 20

C.F.R. § 404.1520a(a). This technique involves four components: (1) determining whether the

claimant has a medically determinable mental impairment; (2) rating the degree of functional limi-

tation in four broad areas (activities of daily living ("ADL"); social functioning; concentration,

persistence, or pace ("CPP"); and episodes of decompensation) resulting from such impairment; (3)

determining the severity of an impairment; and (4) recording the findings. *Id.* § 404.1520a(b)-(e).

Under this regulation, the Commissioner generally concludes that an impairment is not severe when

there are no episodes of decompensation and the other functional limitations are mild or absent. *Id.*

§ 404.1520a(d)(1). Even in those circumstances, however, the Commissioner may find an impair-

ment severe if "the evidence otherwise indicates that there is more than a minimal limitation in [the

claimant's] ability to do basic work activities." *Id.*

In this case, the ALJ found that Plaintiff had no severe mental impairments after recognizing

that Plaintiff had medically determinable personality and affective disorders. *See* Tr. at 21. The ALJ

found the mental impairments not severe because, considered singly and in combination, they did

not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.

*Id.* The ALJ recognized Plaintiff's medical history, which showed conservative treatment with med-

ication management. *Id.* The ALJ further noted that Plaintiff's mental status examinations had been

largely within normal limits showing normal mood, affect, behavior, judgment, and thought content.

*Id.* (citing JPS medical record of April 28, 2013). Additionally, the ALJ discussed the consultative

examination of Dr. Simpson and the findings made therein. Tr. 21-22. In making his severity find-

ing, the ALJ considered the four broad functional areas set out in § 404.1520a(c) and found only a

12

mild limitation in concentration, persistence, or pace. *See* Tr. 22. Applying § 404.1520a(d)(1), the

ALJ found the mental impairments not severe. *Id.*

Plaintiff argues that the ALJ erred in making this non-severity finding by not complying with

Social Security Ruling ("SSR") 85–28. Pl.'s Mem. at 12. That SSR addresses Step 2 of the evalua-

tive sequence and provides:

> An impairment or combination of impairments is found "not severe" and a finding
> of "not disabled" is made at this step when medical evidence establishes only a slight
> abnormality or a combination of slight abnormalities which would have no more than
> a minimal effect on an individual's ability to work even if the individual's age, edu-
> cation, or work experience were specifically considered (i.e., the person's impair-
> ment(s) has no more than a minimal effect on his or her physical or mental abil-
> ity(ies) to perform basic work activities).

*See* Titles II and XVI: Medical Impairments That are Not Severe, SSR 85–28 (PPS–122), 1985 WL

56856, at *3 (S.S.A.1985). Contrary to Plaintiff's argument, the ALJ complied with this SSR.

Plaintiff next argues that substantial evidence does not support the non-severity finding of

the ALJ. Pl.'s Mem. at 13-15. As he recognizes, the ALJ specifically noted treatment notes of April

28, 2013; a January 9, 2014 consultative examination; and a medical opinion of the SSA's non-

examining psychological consultant Dr. Murphy. *Id.* at 13. The records cited by the ALJ all support

his non-severity finding. *See* Tr. 61-62 (PRT competed by Dr. Murphy showing no more than mild

limitations from Plaintiff's medically determinable personality disorder); 214 (record of April 28,

2013, showing normal mood, affect, behavior, judgment, and thought content); 452-56 (consultative

examination of Dr. Simpson). The cited records provide substantial evidence to support the conclu-

sion that the mental impairments are not severe. From those records, a reasonable mind might accept

that conclusion. Furthermore, a review of the medical record shows other JPS records that support

the conclusion. *See* Tr. 323 (July 29, 2013); 545 (July 15, 2014); 728 (August 26, 2014); 821

13

(December 9, 2014).[6]

Plaintiff asserts that the ALJ did not mention (1) the May 14, 2014, from MHMR Tarrant, which described his depression as severe (Tr. 470); (2) JPS records from July and August 2014 (Tr. 544, 728); and his hearing testimony (Tr. 46). Pl.'s Br. at 13. The ALJ, however, did discuss Plaintiff's hearing testimony. *See* Tr. 24 ("As for his mental health, he testified to having a history of anxiety and depression and reported seeing a therapist once a month for this condition."). The brief statement of the ALJ accurately summarizes the testimony. At the hearing, Plaintiff testified that, for "over a year," he had been seeing a nurse practitioner from MHMR once a month for psychotherapy. Tr. 46. Plaintiff also testified that he noticed no difference from the therapy. Tr. 47.

The ALJ did not directly mention the JPS records cited by Plaintiff, but he did state generally that his mental status examinations were largely within normal limits. *See* Tr. 21. In addition, for other impairments, the ALJ later cited directly to Exhibits 8F and 14F, which contain the cited records. *See* Tr. 25. Furthermore even though the cited records show that Plaintiff was undergoing treatment for mental impairments, no one disputes such treatment. The records, moreover, completely support the ALJ's finding that Plaintiff's mental impairments were not severe. *See* Tr. 544 ("Psychiatric/Behavioral: Negative for dysphoric mood and decreased concentration."); 728 ("Psychiatric: He has a normal mood and affect. His behavior is normal."). The ALJ did not err when he did not directly cite medical records that essentially contain the same information as the record that he did cite.

---

[6]The government lists sixteen other records to support the same conclusion, *see* Def.'s Resp. Br. at 8 n.4, but those other records are merely duplicate entries in the medical record. As recently noted in a different case, the issue of duplicate records appears to be a growing problem. *See Leake v. Colvin*, No. 4:15-CV-0475-O-BL, unpub. (N.D. Tex. June 22, 2016) (recommendation of Mag. J.). Parties should not compound the problem by citing to duplicate entries in an apparent effort to bolster their position. Duplicate records add no value to any party's position.

The ALJ also did not mention the May 14, 2014 letter from MHMR. Even if the Court were to find that the ALJ erred in its consideration of this letter, such error appears harmless. A procedural error does not require reversal and remand, unless the error affects the substantial rights of the claimant. *Snodgrass v. Colvin*, No. 11-CV-0219-P, 2013 WL 4223640, at *7 (N.D. Tex. Aug. 13, 2013) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). To warrant reversal, the error must "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Ware v. Colvin*, No. 11-CV-1133-P, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)).

The unmentioned letter does little more than identify the diagnoses of Plaintiff's mental impairments. *See* Tr. 470. That the letter describes the major depressive disorder as severe does not necessarily mean that the impairment is severe within the meaning of a social security disability determination. Although the ALJ may consider medical evidence from "other sources," such as the nurse practitioner who signed the letter, *see* 20 C.F.R. § 404.1513(d), the letter lacks sufficient substance to warrant much weight under the applicable regulation for evaluating opinion evidence, *see* 20 C.F.R. § 404.1527.

Even if the letter is considered as an opinion of a treating source, it would not be entitled to controlling weight because it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and appears inconsistent with other substantial evidence in the medical record. *See id.* § 404.1527(c)(2). The letter, furthermore, may be given less weight because it is conclusory, lacks support of any medical signs or laboratory findings, appears inconsistent with the

record as a whole, and is inconsistent with medical opinions of a specialist. *See id.* § 404.1527(c)(3)-(5). For good cause shown, an ALJ may assign "little or no weight" to a treating source's opinion. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Given the conclusory nature of the letter, the Court should find no realistic possibility that the ALJ would have reached a different conclusion regarding the severity of Plaintiff's mental impairments had the ALJ considered the letter from MHMR. The failure to consider the letter does not cast into doubt the existence of substantial evidence to support the finding that those impairments are not severe. Accordingly, the failure is harmless error, if error at all.

Plaintiff also asserts that the ALJ failed to develop the record with respect to his mental impairments. The Social Security Administration "conduct[s] the administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900. Because "Social Security proceedings are inquisitorial rather than adversarial . . . [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, (2000). The Fifth Circuit has long held "that due to the nature of administrative hearings under the Social Security Act, the ALJ has a special responsibility to develop a full and fair record upon which to base his decision." *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. Dec. 1981). ALJs have the duty "to develop the facts relative to a claim for benefits fully and fairly." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984); *accord Newton*, 209 F.3d at 458; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). When they fail in that regard, they lack "sufficient facts on which to make an informed

16

decision" and their decision "is not supported by substantial evidence." *Kane*, 731 F.2d at 1219; *accord Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015).

This does not mean, however, that the claimant has no obligation or responsibility to submit evidence. Indeed, the responsibility "for securing evidence of disability . . . is clearly on the claimant." *Thorton*, 663 F.2d at 1316. In addition, while ALJs have a "duty to fully and fairly develop the facts," that duty does not require an "ALJ to obtain all of a claimant's medical records before reaching a decision." *Sun*, 793 F.3d at 509. Moreover, a "failure of the ALJ to develop an adequate record is not" a per se ground for reversal. *Kane*, 731 F.2d at 1219. Reversal for such a failure is warranted only when the claimant "shows prejudice from the ALJ's failure to request additional information." *Newton*, 209 F.3d at 458; *accord Sun*, 793 F.3d at 509. To show prejudice, the claimant must show "that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* (quoting *Ripley*, 67 F.3d at 557 n.22).

In this case, the ALJ questioned Plaintiff about his mental impairments. *See* Tr. 37, 39-40, 43. He also specifically questioned Plaintiff about his psychotherapy. *See* Tr. at 46-47. While the questioning could have been more extensive, the ALJ appears to have sought facts related to Plaintiff's mental impairments. Although the administrative record contains several references to treatment at MHMR, Plaintiff has not shown any additional evidence that might have resulted in a different decision by the ALJ. Accordingly, even if the ALJ failed to adequately develop the record regarding the MHMR treatment, Plaintiff has not shown prejudice and the failure of the ALJ is no more than harmless error.

With respect to the ALJ's RFC determination, Plaintiff argues that the ALJ failed to

accurately set forth limitations based on his mental impairments. Pl.'s Br. at 13. However, an RFC

determination only needs to set forth the limitations that are supported in the record. *Smith v. Colvin*,

No. 1:11-CV-170-BL, 2013 WL 1294681, at *7 (N.D. Tex. Mar. 29, 2013) (citing *Morris v. Bowen*,

864 F.2d 333, 336 (5th Cir. 1988)). The record in this case does not support additional limitations

based upon Plaintiff's mental impairments.

Citing SSR 85-15, Plaintiff suggests that a mental impairment may be more serious when

past relevant work is more complex. Pl.'s Reply Mem. at 1. That SSR does state: "In the world of

work, losses of intellectual and emotional capacities are generally more serious when the job is

complex." Titles II & XVI: Capability to do Other Work-Themedical-Vocational Rules as a Frame-

work for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, at *8 (S.S.A.

1985). However, the very next sentences adds that "[m]ental impairments may or may not prevent

the performance of a person's past jobs." *Id.* SSR 85-15 provides no basis to find that the ALJ erred

in finding Plaintiff's mental impairments non-severe or in his general consideration of Plaintiff's

mental impairments.

For all of these reasons, the Court should find no basis to reverse the decision of the

Commissioner based upon the issues Plaintiff raises concerning his mental impairments.

## B.  Weight Given to Medical Evidence and Related Issues

Plaintiff next argues that the ALJ's analysis of uncontradicted evidence from his treating

physician, Dr. Saifee, does not comport with requirements of 20 C.F.R. § 404.1527 and binding

precedent set out in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). Pl.'s Mem. at 15-18. Plaintiff

contends that when an ALJ's RFC determination conflicts with opinions of a medical source, §

404.1527 requires the ALJ to provide good reasons why he did not adopt such opinions, specific

18

reasons for the weight given, and the reasons must be supported by evidence in the case record. *Id.* at 15. In other words, the ALJ must address the opinions through factors set out in § 404.1527(c). *Id.* at 16. Additionally, Plaintiff argues that when an ALJ determines that the treating physician's records are inadequate to receive controlling weight, the ALJ "must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id.* Lastly, Plaintiff argues that, while the ALJ correctly found Dr. Saifee's opinion not entitled to controlling weight or any special significance, the ALJ failed to comply with the requirement of SSR 96-5p that he evaluate all the evidence of the case. *Id.* at 17.

When considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions and any other relevant evidence received. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination of the claimant), or non-examining sources (a physician who reviews only the claimant's medical record). *See generally* 20 C.F.R. § 404.1502. The Fifth Circuit has "long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985)). Nevertheless, even opinions from a treating source are "far from conclusive," because ALJs have "the sole responsibility for determining the claimant's disability status." *Id.*; *accord Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1994). The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan,* 925 F.2d 785, 790 (5th Cir. 1991). ALJs have considerable discretion in assigning

19

weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56.

Some opinions from medical sources, even treating sources, do not constitute a medical opinion entitled to any special significance. 20 C.F.R. § 404.1527(d)(3). As explained to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* § 404.1527(a)(2). However, the regulation reserves some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulation. *Id.* § 404.1527(d). One such issue is whether a claimant is disabled or unable to work. *Id.* § 404.1527(d)(1). The Commissioner is not bound by disability opinions even from a medical source. *Id.*

While determination of some issues, such as disability, "are legally reserved for the Commissioner, Social Security guidelines require adjudicators making these determinations to consider the opinions of medical sources and 'apply the applicable factors' denoted in the regulations when weighing the opinions." *Giles v. Astrue*, 433 F. App'x 241, 247 (5th Cir. 2011). Indeed, SSR 96-5p provides that Social Security "adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Titles II & XVI: Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996). Although opinions on issues reserved for the Commissioner "are never entitled to controlling weight or special significance," adjudicators cannot ignore treating source opinions on such issues but must "evaluate all evidence in the case record that may have a

bearing on the determination or decision of disability." *Id.* at *2-3. Furthermore, when "evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors" set out in 20 C.F.R. § 1527(c). *Id.* at *3.

In this case, the ALJ considered opinions of Dr. Saifee (Exs. 6F, 10F, and 12F)[7] that the claimant is disabled, but found that the "opinions merit no weight because they are opinions reserved to the Commissioner." Tr. 26. As set out in Exhibit 6F, following complaints by Plaintiff including hypertension and depression, Dr. Saifee recorded a guarded prognosis; opined that Plaintiff was "dis-abled," and diagnosed CAD, major depression, hypothyroid, hyperlipidemia, diabetes, and arthritis. Tr. 467 (July 16, 2013). Within Exhibit 10F, Dr. Saifee also noted "multiple problems" with "pain in hands" and CAD on August 8, 2013. Tr. 627. He diagnosed diabetes, CAD, hypothyroid, and obesity; noted major depression; and stated that Plaintiff was "unable to work" and had "financial problems." *Id.* He again opined that Plaintiff was "totally disabled" due to "multiple health related problems" on August 11, 2014. Tr. 472, 476. At that time he noted CAD and diabetes as disabling diagnoses, Tr. 472, and also listed major depression and obesity as diagnoses, Tr. 476. Although he completed a one-page "Medical Release/Physician's Statement" that provided an opportunity to specify the maximum hours per workday that Plaintiff could sit, stand, walk, climb, kneel, bend, push, pull, lift, and keyboard, Dr. Saifee did not specify any hours, but instead simply stated "totally disabled." Tr. 472.

To the extent Dr. Saifee opines that Plaintiff is disabled or unable to work, the ALJ appro-priately accorded no special significance to such opinions. *See* 20 C.F.R. § 404.1527(d)(3). The

---

[7]Exhibit 6F (Tr. 466-79) contains various opinions. Exhibit 12F (Tr. 657-58) merely duplicates Exhibit 6F, *compare* Tr. 472 *with* Tr. 658, and Exhibit 10F (Tr. 624-27) duplicates part of Exhibit 6F, *compare* Tr. 467 *with* Tr. 625.

opinions, moreover, are not entitled to controlling weight. Titles II & XVI: Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996). Nevertheless, when considering the weight to attribute to such opinions, the ALJ should conduct the six-factor detailed analysis set out in 20 C.F.R. § 1527(c). *Id.* at *2-3. Although there are circumstances when an ALJ may forego the analysis, *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (recognizing that an ALJ may reject the opinion of a treating physician without conducting the analysis when reliable medical evidence from a treating or examining physician controverts the rejected opinion), the ALJ in this case states no reason for failing to analyze the non-medical opinions of disability through the process set out in § 1527(c). It was error for the ALJ to bypass the six-factor analysis without adequate explanation.

In addition to the opinions of disability that do not constitute a medical opinion under the social security regulations, Dr. Saifee also recorded medical opinions in the form of a guarded prognosis and various diagnoses that reflect his judgment about the nature of Plaintiff's impairments. The regulation requires consideration of the six-factor analysis unless the ALJ gives these medical opinions controlling weight. 20 C.F.R. § 404.1527(c)(1)-(6).[8] For a medical opinion of a treating source to be entitled to controlling weight it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not inconsistent with other substantial evidence in the case. *Id.* § 404.1527(c)(2). Even though the medical opinions of Dr. Saifee appear consistent with other substantial evidence in the case, the opinions are not entitled to controlling weight

---

[8] These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

because one cannot determine from the records whether the opinions are well-supported. Consequently, the ALJ erred by not conducting the six-factor analysis without explanation.

Although the ALJ did not conduct the detailed analysis required by § 404.1527(c) for any medical or non-medical opinion of Dr. Saifee and does not state his reasons for not doing so, the Court should find the failure to be harmless error. As discussed previously an error must affect the substantial rights of the claimant to justify reversal and remand. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). In addition, the failure to conduct the six-factor analysis does not call into question the existence of substantial evidence and the Court should not find a realistic possibility that the ALJ would have reached a different conclusion had he conducted the six-factor analysis.

The ALJ rejected the disabling opinions of Dr. Saifee solely on grounds that they address an issue reserved for the Commissioner. Tr. 26. While that is proper factor to consider under the catch-all, any-other-factor portion of the analysis, it is insufficient to end the analysis. In this case, however, the disabling opinions are conclusory, lack support in the medical evidence of record, and are inconsistent with the record as a whole. The other factors appear insufficient to accord significant weight to the disabling opinions of Dr. Saifee. Consequently, even had the ALJ conducted the six-factor analysis with respect to the disabling opinions, there is no realistic possibility that he would have reached a different conclusion. The ALJ, furthermore, relied on medical evidence from two examining physicians (Drs. Simpson and Bosworth), *see* Tr. 21-22, 26, that appears reliable and controverts the conclusory opinions of Dr. Saifee that Plaintiff is disabled and unable to work. Such reliance provides a legitimate basis for rejecting the disabling opinions without the detailed analysis required by § 1527(c) and SSR 96-5P. Moreover, ALJs permissibly assign little or no weight to opinions of a treating source for good cause, such as when "the treating physician's

evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F,3d at 455-56. In this instance, the disabling opinions of Dr. Saifee are all of the above. For all of these reasons, the failure to analyze the disabling opinions of Dr. Saifee through the lens of the six factors is harmless error.

The ALJ also failed to analyze the medical opinions of Dr. Saifee. Although these opinions are not entitled to controlling weight on the record before the Court, they appear essentially consistent with the ALJ's decision despite the failure to specifically address them. The diagnoses of Dr. Saifee correlate well with the severe impairments found by the ALJ. While Dr. Saifee recorded a guarded prognosis in one record and diagnoses of arthritis and hyperlipidemia, his records are mostly conclusory and provide no significant support. At no point, furthermore, did Dr. Saifee make any attempt to set out any limitations or restrictions caused by Plaintiff's impairments. Nor did he state a medical opinion on their severity – as already discussed, his opinions that Plaintiff is disabled and unable to work are non-medical opinions on issues reserved for the Commissioner. While Dr. Saifee notes a diagnosis of "major depression," that diagnosis does not dictate a finding that the impairment is severe. *See Hammond v. Barnhart*, 124 F. App'x 847, 853 (5th Cir. 2005) (affirming non-severity finding despite a diagnosis of "major depressive disorder"). Moreover, the ALJ's recognition that Plaintiff had a medically determinable affective disorder is consistent with the noted diagnosis. On the record before it, the Court should find no realistic possibility that the ALJ would have reached a different conclusion even had he analyzed the medical opinions through the six factors. Accordingly, the Court should find the failure harmless.

Plaintiff also argues that the ALJ erred by not re-contacting Dr. Saifee as purportedly required under *Newton* and the regulations. Pl.'s Mem. at 16-17. "As recently noted in the Northern District

of Texas, however, 20 C.F.R. § 404.1520b(c)(1) has replaced the former mandatory requirement of § 404.1512(e) that *Newton* applied." *Bentley v. Colvin*, No. 13-CV-4238-P, 2015 WL 5836029, at *5 (N.D. Tex. Sept. 30, 2015). Under § 404.1520b(c)(1), "the ALJ may re-contact a treating physician or other medical source if there is insufficient evidence to determine whether the claimant is disabled." *Perry v. Colvin*, No. 13-CV-2252-P, 2015 WL 5458925, at *7 (N.D. Tex. Sept. 17, 2015); *accord Jones v. Colvin*, No. 4:13-CV-818-A, 2015 WL 631670, at *7 (N.D. Tex. Feb. 13, 2015) (accepting recommendation of Mag. J. which recognized that, effective March 26, 2012, this new regulation replaced the former mandatory requirement of § 404.1512(e) applied in *Newton*).[9] Additionally, "if after weighing the evidence [the ALJ] cannot reach a conclusion about whether [the claimant is] disabled," § 404.1520b(c) provides "various options, including re-contacting a treating physician or other medical source, to resolve an inconsistency or insufficiency of evidence." *Bentley*, 2015 WL 5836029, at *8.

A review of the administrative record as a whole should convince the Court that the ALJ did not err when he did not re-contact Dr. Saifee or obtain an additional evaluation of Plaintiff. The record contains sufficient evidence to conclude that Plaintiff is not disabled and the ALJ had sufficient evidence to make the disability determination after weighing the evidence. These circumstances do not warrant re-contacting a physician or otherwise obtaining additional evidence. That Dr. Saifee opined that Plaintiff was disabled and unable to work does not necessitate additional evidence.

---

[9] This regulation was in effect when the ALJ issued his decision on March 24, 2015. Prior to the effective date of § 404.1520b, the ALJ would have been obliged under the mandatory provision of § 404.1512(e) to "seek clarification or additional evidence from the treating physician" if the ALJ determined "that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant." *See Newton*, 209 F.3d at 453.

Plaintiff next argues that the medical evidence supports additional non-exertional limitations that the ALJ did not include in his RFC finding. Pl.'s Mem. at 18-19. More specifically, he contends that the evidence demonstrates (1) his use of a cane; (2) instructions to elevate his legs; (3) impairments that contribute to shortness of breath, angina, and claudication, edema, and lymphedema of the lower extremities; (4) pain that would contribute to deficiencies of CPP; and (5) postural limitations, but the RFC limiting him to a full range of sedentary work does not address these additional limitations. *Id.*

Although Plaintiff testified that he had been using a cane for more than a year, Tr. 43, and had received instructions to elevate his legs, Tr. 45, no medical record shows that any physician directed him to use a cane or to elevate his legs. To the contrary, Dr. Bosworth specifically states that Plaintiff does not require a "cane, crutch or walker." Tr. 459.

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

Policy Interpretation Ruling Titles II and XVI: Determining Capability to do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). Given the medical record, the ALJ had adequate reason not to include a need for a cane or leg elevation into his RFC determination.

The ALJ, furthermore, specifically considered Plaintiff's complaints "of bilateral foot pain and loss of sensation" and his reports of "neuropathy and circulation problems and sores on his ankles," chest pain, limitations on walking, alleged postural limitations, and "history of coronary artery disease with associated symptoms of fatigue and shortness of breath." Tr. 24-26. He also con-

sidered Plaintiff's mild limitation regarding CPP and found him able to complete tasks and follow instructions. Tr. 22. He considered Plaintiff's daily activities. Tr. 24. Considering the record as a whole, the ALJ concluded that Plaintiff retained the RFC to perform the full range of sedentary work. Tr. 24-27.

Under the applicable regulations, "'sedentary work' represents a significantly restricted range of work" and individuals who are limited to such work "have very serious functional limitations." SSR 96-9p, 1996 WL 374185, at *3. Furthermore, postural limitations do "not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." *Id.* at *7. Because RFC determinations need only set forth limitations that are supported in the record, *see Smith v. Colvin*, No. 1:11-CV-170-BL, 2013 WL 1294681, at *7 (N.D. Tex. Mar. 29, 2013) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)), the Court should find no error in the ALJ limiting Plaintiff to the full range of sedentary work on the record in this case. Even if the ALJ erred by not including postural limitations in his RFC determination, the Court should find the error harmless because Plaintiff's past relevant work do not require activities affected by the postural limitations. *See* Dictionary of Occupational Titles, DOT # 168.167-058, 1991 WL 647371 (4th ed. revised 1991) (customer service manager); Dictionary of Occupational Titles, DOT # 239.362-014, 1991 WL 672224 (4th ed. revised 1991) (customer service representative). Plaintiff also submitted a Work History Report which shows that his prior jobs did not require any activity affected by the postural limitations. *See* Tr. 147-48. Consequently, the postural limitations would not have altered the ALJ's decision.

For all of these reasons, the Court should find no basis to reverse the decision of the Commissioner based upon the issues Plaintiff raises concerning the weight given to the medical

27

evidence and related issues addressed in this section.

## C. Credibility Determination

Plaintiff next argues that the ALJ improperly evaluated his credibility. Pl.'s Mem. at 19-22.

He contends that the ALJ relied on lay opinion and misstatements of or omissions from the record.

*Id.* at 19-20. He disagrees with the ALJ's characterization of his treatment as conservative. *Id.* at

19-21. In addition, he contends that the ALJ did not consider his exemplary work history or lack of

medical insurance. *Id.* at 20-22.

Before setting out the medical evidence, the ALJ noted that "the objective findings in this

case fail to provide strong support for the claimant's allegations of disabling symptoms and limita-

tions." Tr. 24. He specifically found that "the medical findings do not support the claimant's alle-

gation that he is unable to work." Tr. 24-25. Following that finding, he noted Plaintiff's history of

diabetes, "which has been treated with medications;" a history of non-compliance with treatment;

neurological examinations that have "been largely within normal limits;" and a history of "incon-

sistent treatment. Tr. 25. With respect to Plaintiff's CAD and associated symptoms of fatigue and

shortness of breath, the ALJ noted a history of high blood pressure treated with medication;

Plaintiff's statements that his shortness of breath "occurs rarely and is mild;" reports of non-compli-

ance with medication; "continued complaints of a fairly stable pattern of warm-up type angina" that

has "settled down and [is] less frequent with medication management." *Id.*

Although the ALJ found that Plaintiff's "medically determinable impairments could reason-

ably be expected to cause the alleged symptoms," the ALJ found Plaintiff's "statements concerning

the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 26.

The ALJ viewed the objective medical findings as supporting "some limitations, but not to the extent

28

alleged by the claimant." *Id.* He restated that the record shows "a history of diabetes mellitus that has been treated conservatively on an inconsistent basis" and the record does not reveal any "evidence of associated organ damage." *Id.* With respect to Plaintiff's CAD, the ALJ noted a "successful surgical intervention" and again noted Plaintiff's non-compliance with treatment. *Id.* The ALJ later stated that Plaintiff's credibility "is weakened by the objective medical evidence." Tr. 27.

Courts accord "great deference" to an ALJ's credibility assessment when substantial evidence supports it. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *accord Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). While given circumstances may require ALJs to state specifically their reasons for finding subjective complaints not credible, they are not required to follow any formalistic rule or language. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). The ALJ in this case stated specific reasons for finding Plaintiff's subjective symptoms not credible and the Court should find substantial evidence to support that credibility assessment.

Although Plaintiff quarrels with terminology used, the ALJ adequately explained what he meant by "conservative treatment." The record, furthermore, indeed shows inconsistent treatment and non-compliance with treatment. These are relevant factors in the credibility determination. *See* Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996)[10] (recognizing that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons

---

[10]Effective March 16, 2016, SSR 96-7p was superseded by Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 WL 1020935, at *1 (S.S.A. Mar. 16, 2016). SSR 96-7p was in effect when the ALJ issued his decision.

for this failure"); *accord Martinez v. Chater*, 70 F.3d 1269 (5th Cir. 1995) (finding that ALJs may consider whether the claimant sought treatment when considering the claimant's credibility).

Citing SSR 96-8p, SSR 96-7p, and 20 C.F.R. § 404.1529(c)(3), Plaintiff contends that the ALJ should have considered his exemplary work history when assessing his credibility. SSR 96-7p requires credibility assessments to be made on all the evidence in the record, including "prior work record and efforts to work." SSR 96-7p, 1996 WL 374186, at *5. SSR 96-8p also identifies "[e]vidence from attempts to work" as a factor to consider when assessing a claimant's RFC. *See* Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). In addition, § 404.1529(c)(3) states that the Commissioner will consider all evidence presented, "including information about your prior work record" when considering whether to find a claimant disabled.

Contrary to Plaintiff's contention, the ALJ specifically noted Plaintiff's work history and referenced a Work History Report (Ex. 3E). Tr. 27. The report shows that Plaintiff worked as a manager for a call center from May 1985 through October 2002 and as a supervisor/manager from May 2003 through October 2011. Tr. 146. The ALJ also referenced Plaintiff's earnings record (Ex. 2D) in his decision. Tr. 27. That earnings record shows substantial and regular earnings since the early- to mid-1970s. *See* Tr. 126-27. Plaintiff's own testimony, furthermore, shows that he has not made any attempt to work after his employment ended on October 5, 2011. *See* Tr. 37. Based on that testimony, there was no failure to consider attempts to work. In addition, although the ALJ did not characterize Plaintiff's work history as exemplary or specifically refer to it when addressing his credibility, the ALJ did not violate SSR 96-7p or § 404.1529(c)(3) in his consideration of Plaintiff's credibility. The Court should find no error with respect the ALJ's consideration of Plaintiff's work

history.

Plaintiff next contends that, although he reported a lack of medical insurance as shown by a Disability Report submitted in April 2014, *see* Tr. 192, and a JPS record noted that he had not been taking "prescribed medications because he lost his job," Tr. 321, the ALJ did not consider his lack of medical insurance when making his credibility determination.  Pl.'s Mem. at 20.

Case law has long recognized that poverty may affect the ability of a claimant to remedy his or her condition. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). SSR 82-59, furthermore, has recognized since 1982 that an inability to afford available treatment may justify a failure to follow prescribed treatment. *See* Titles II and XVI: Failure to Follow Prescribed Treatment, SSR 82–59 (PPS–78), 1982 WL 31384, at *5 (S.S.A. Jan. 1, 1982).  To justify such failure under SSR 82-59, the claimant must explore "[a]ll possible resources (e.g., clinics, charitable and public assistance agencies, etc.)." *Id.* at *4.  Additionally, although SSR 96-7p permits adjudicators to find a claimant less credible for inconsistent treatment and non-compliance with treatment,

> the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p, 1996 WL 374186, at *7.  SSR 96-7p also specifically notes that an "individual may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.* at *8.

The requirement that the ALJ consider a claimant's inability to pay for medical treatment does not apply, however, unless the claimant has "shown that [he] did not have access to free or low-cost medical services." *Mason v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-236-O, 2009 WL 400831, at *9 (N.D. Tex. Feb. 13, 2009) (adopting recommendation of Mag. J.).  Because Plaintiff

31

has not made that showing, the ALJ did not err in failing to consider his lack of medical insurance.

In addition, a failure to comply with SSR 96-7p is subject to harmless error analysis, *Nall v. Barnhart*, 78 F. App'x 996, 997 (5th Cir. 2003) (per curiam), and even if the ALJ did err in that respect, such error appears harmless under the circumstances. The ALJ did not make his credibility determination solely on Plaintiff's inconsistent treatment and non-compliance. Even had the ALJ considered the lack of insurance, there is no realistic possibility that he would have changed his credibility finding. Plaintiff has often sought treatment despite the lack of insurance and nothing of record indicates that he was unable to pay or lacked access to proper care. Even if the ALJ erred by not considering the lack of insurance, such error does not cast into doubt the existence of substantial evidence to support his credibility determination. Because substantial evidence supports the credibility determination even with the alleged error, the determination is entitled to judicial deference. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

For all of these reasons, the Court should find no error in the credibility determination of the ALJ.

## V. CONCLUSION

For the reasons set forth in this Report and Recommendation, the Court should find that substantial evidence supports the decision to deny benefits and that no error justifies reversal and remand. The undersigned thus **RECOMMENDS** that the district court **AFFIRM** the Commissioner's decision to deny benefits.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this** 4 th **day of August, 2016.**


**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**